No. 12810

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

EDWARD J. SHELTON, JR., D.O.,

Plaintiff and Appellant,

-vs-

BOARD OF MEDICAL EXAMINERS; and
THE ATTORNEY GENERAL OF THE STATE
OF MONTANA,

Defendants and Respondents.

---

Appeal from: District Court of the First Judicial District,
Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellant:

William Dee Morris argued, Helena, Montana

For Respondents:

John Poston, argued, Special Assistant Attorney
General, Helena, Montana

---

Submitted: January 16, 1975

Decided: APR 2 8 1975

Filed: APR 2 8 1975

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment entered in the district court, Lewis and Clark County, affirming the Montana Medical Board of Examiners' decision in refusing to license plaintiff Dr. Edward J. Shelton, Jr., to practice medicine and surgery in Montana. Plaintiff's application was based on reciprocity, involving the states of Washington, Michigan and Kentucky.

Dr. Shelton received his Doctor of Osteopathy degree in 1958 from the College of Osteopathic Physicians and Surgeons at Kansas City, Missouri. He applied for a license to practice unlimited medicine and surgery in Montana in 1971. A temporary conditional license to practice medicine and surgery was issued pursuant to section 66-1027(3), R.C.M. 1947. Such license was conditioned upon the information supplied by Shelton being substantiated and verified by the Board's investigation and further, upon Shelton's promise that he would take the required state examination when given in December 1971.

The Board made the necessary arrangements for Shelton to take the examination in Helena in December 1971. He failed to appear on the day the examination was scheduled, but later notified the Board he had been too busy to take the examination in December, but promised he would do so in June 1972. Again, arrangements were made for Shelton to take the examination, but again he failed to appear. The temporary, conditional license to practice medicine issued to Shelton was allowed to expire in October 1972.

The First Regular Session of the Forth-Third Legislature of Montana amended the Medical Practice Act in 1973. Section 66-1025 was amended by adding a subsection 6, which provides:

"Holders of the degree of doctor of osteopathy granted in 1955 or before will be certified only on the basis of taking and passing the examination given by the department, subject to section 82A-1603. Holders of the

degree of doctor of osteopathy granted after 1955 will be certified in the same manner as provided above for physicians." (Emphasis supplied.)

Because of this legislative enactment, effective March 21, 1973, Shelton notified the Board he wished to have his application reevaluated. The Board again apprised him that his application was deficient in several respects. One of these deficiencies was that people he had named as personal references did not respond to the Board in such a manner as would enable the Board to give Shelton a permanent license. The Board also advised him he would be required to take the Flex Examination, a standard medical examination given nationally and accepted by a majority of the states. The Board stated it would waive the basic science portion of that examination. Further, that Shelton would be required to pay the $100 fee as required by law and to sign the affidavit on his application, which was necessary for verification.

On August 21, 1973, Shelton was again notified by the Board, this time in writing, that it was refusing to accept his application for reciprocity on these four grounds:

1. Applicant failed to pay the required fee.

2. Applicant failed to verify his application.

3. The responses from persons named as references were insufficient.

4. The applicant failed to take the Flex Examination as required by the Board.

Contained in the same notice of nonacceptance of his application was a notice of hearing on the matter October 15, 1973 at 10:00 a.m. Shelton was in the process of changing attorneys at this time and for this reason the hearing was continued several times at Shelton's request and was finally held on November 29, 1973. The entire transcript of such hearing was presented to the Board at its meeting on December 8, 1973.

The November 29 hearing revealed:  Shelton had failed to properly verify his application by signing it before a notary; he had not paid the $100 fee as required by section 66-1031(2), R.C.M. 1947; only one of his references' responses was acceptable, the other had been returned with the word "unknown" written as an answer to many of the questions; and, there was much confusion as to Shelton's prior licensing.

In explanation of the unsatisfactory reference responses, Shelton stated he was told to try and use Montana doctors as references but he had been in Montana a very short time and there just was not sufficient time for Montana doctors to get to know him and his qualifications.  He later gave four more references to the Board at its request, but two of these were returned undelivered.

The confusion as to Shelton's prior licensing was brought on by the fact he was licensed to practice only osteopathy in Washington and Michigan.  His license with the state of Kentucky could not be evaluated, although the Board made several attempts to determine exactly what the Kentucky license entailed, and what examination was used by the Kentucky Medical Examiners in 1958, when Shelton took the examination.  The Board was unable to get the required information.

The November hearing further revealed that Shelton had practiced in several hospitals in the states where he was licensed; that he was admitted to practice in St. James Community Hospital in Butte, Montana--the first Doctor of Osteopathy to be granted the privilege under the 1973 amendment to section 66-1025, R.C.M. 1947; he had been trained at the School of Aerospace Medicine and later became a military flight surgeon.  Shelton was also recommended for a program to train to be an astronaut physician, a more sophisticated branch of the air force flight surgeon training.  The record shows that Shelton is now employed at the Veterans Hospital in Miles City, Montana, where he is engaged in nuclear medicine.

The Montana Board of Medical Examiners reviewed the entire transcript and allowed one additional month for Shelton to present any additional documentary evidence that he chose to present. On January 9, 1974, the Board entered its order and notice of nonacceptance of Shelton's application for a license by reciprocity. That order was the basis of Shelton's appeal to the district court on February 4, 1974.

The parties stipulated to the content of the record transmitted to the district court. On March 13, 1974, Hon. Gordon R. Bennett entered an order affirming the Board's decision. Shelton filed objections to the order and hearing was set and heard on April 5, 1974. On April 15, 1974, the district court entered an order overruling Shelton's objections.

The issues presented for review on appeal are:

1. Did the Board act within the scope of its constitutional and statutory authority in denying Shelton a license by reciprocity to practice unlimited medicine and surgery in Montana, and

2. Was the Board's action in denying the license by reciprocity and the reasons given supported by reliable, probative and substantial evidence?

Section 66-1011, R.C.M. 1947, of the Medical Practice Act, states the purpose of the Act:

"It is hereby declared, as a matter of legislative policy in the state of Montana, that the practice of medicine within the state of Montana is a privilege granted by the legislative authority and is not a natural right of individuals and that it is deemed necessary, as a matter of such policy and in the interests of the health, happiness, safety and welfare of the people of Montana, to provide laws and provisions covering the granting of that privilege and its subsequent use, control and regulation to the end that the public shall be properly protected against unprofessional, improper, unauthorized and unqualified practice of medicine and to license competent physicians to practice medicine and thereby provide for the health needs of the people of Montana."

Section 66-1017(1), R.C.M. 1947, then provided that the Board of Medical Examiners shall:

"* * * adopt and promulgate such rules and regu-
lations as the board may deem necessary or proper
to carry out the provisions and purposes of this
act which shall be fair, impartial and nondiscrimina-
tory * * *."

It is therefore, the duty of the Board to insure:

"* * * that the public shall be properly protected
against unprofessional, improper, unauthorized and
unqualified practice of medicine and to license
competent physicians to practice medicine."

The Board must decide if an applicant to practice medicine in
Montana is duly qualified and comes within the mandate given it
by the legislature. To accomplish this, the Board requires each
applicant to fill out an application, furnish references, verify
the application before a notary, and appear before the Board for a
personal interview. It is the burden of the applicant to supply
the Board with the necessary information. It is the duty of the
Board to investigate the information supplied to determine if the
applicant is qualified to practice in Montana. Section 66-1031,
R.C.M. 1947, requires each applicant to pay a fee of $100 to
defray the costs of investigation by the Board.

There has long been a conflict as to the practice of Doctors
of Osteopathy in a medical world dominated by Doctors of Medicine.
This conflict has finally been resolved in Montana. Section 66-1025
(6), R.C.M. 1947, states that holders of the degree of Doctor of
Osteopathy granted after 1955 will be certified in the same manner
as provided for physicians. That statute also provides the way for
certification, by either passing the Montana Board Examination, passing
the federal licensing examination or:

"(c) A valid, unsuspended, and unrevoked license or
certificate issued to the applicant on the basis of
an examination by an examining board under the laws of
another state or territory of the United States or of
the District of Columbia or of a foreign country whose
licensing standards at the time the license or certificate
was issued were, in the judgment of the board, essentially
equivalent to those of this state for granting a license
to practice medicine, if under the scope of the license or
certificate the applicant was authorized to practice medicine
in the other state, territory, or country." (Emphasis
supplied.)

- 6 -

Applying all of the above cited laws to the facts of the instant case, we find the Board of Medical Examiners acted within the scope of its constitutional and statutory authority in denying Shelton a license by reciprocity to practice unlimited medicine and surgery in the state of Montana. The Board was not acting discriminatorily nor capriciously in its denial.

By failing to supply the Board with the necessary information for it to form an opinion as to his medical ability and his moral qualifications, Shelton has not met his burden. He has not fully cooperated with the Board, even after the Board accepted his initial application and gave it full faith and credit, subject to investigation, by the issuance of a temporary license to practice in Montana during this period. The fee required of all applicants was not paid. The required reference response was not furnished. He failed to take the Flex Examination as required, after the Board offered to waive the basic science section. The reciprocity requirements from Michigan and Washington were not adequate. The Kentucky standards at the time he was licensed there could not be satisfactorily demonstrated.

Judgment of the district court is affirmed.

_____
Justice

We Concur:

_____

_____

_____
Justices

_____
Hon. Arthur Martin, sitting for
Chief Justice James T. Harrison.

- 7 -